No. 4662.

F. B. FLEITAS *v.* CONSOLIDATED ASSOCIATION OF THE PLANTERS OF
LOUISIANA et als.

The main question in this case is, whether a plantation having been sold at the suit of a
first mortgagee, the rights of subsequent mortgagees are transferred by the sale to the
proceeds—said mortgages no longer subsisting. The decision of the controversy depends
on the interpretation to be given to a clause in the *concordat* between certain debtors
and their mortgage creditors of superior and inferior rank.

This court thinks that said clause, which is recited at full length in the judgment, did not
bind Mrs. Crozat, one of the first class creditors, in case of her foreclosing her mortgage,
to cause the property to be sold at one, two and three years, for the reason that her
mortgage was not novated, that her note was not identified with the *concordat*, and that
she could not proceed under it to enforce her mortgage rights. Her purpose, in becoming
a party to the *concordat*, was simply to give certain debtors an opportunity to pay their
debts to their creditors by suspending the enforcement of her mortgage to a given time,
provided the interest on her claim was punctually paid. The failure to pay this interest,
which was made the express condition of her agreement to the delay, released her from
the obligation of said contract, and restored her to her full rights under her own act of
mortgage.

Mrs. Crozat did not expressly consent in the *concordat*, to enforce her first mortgage under
the stipulations of that second act, and it is not to be presumed that she gave up more of
her rights than were clearly and distinctively waived or relinquished. This act is to be
construed liberally in her favor, as no one is presumed to give. She had therefore the
right to seize and sell as she did. The sale and adjudication to the plaintiff having been
legally made, and the price absorbed by the first and second mortgages, those created in
favor of the third mortgagees are properly canceled, and the plaintiff can not be disturbed
in the rights he has acquired.

APPEAL from the Superior District Court, parish of Orleans. *Haw-
kins,* J.   *W. W. King, Semmes & Mott,* for plaintiff and appellee.
*E. Bermudez, E. W. Huntington* and *P. Capdeville,* for defendants and
appellants; *A. Pitot,* for Mrs. Cruzat.

HOWELL, J.   The plaintiff alleges that he purchased a certain plant-

ation in the parish of St. Bernard at sheriff's sale under executory process issued on a first mortgage, and that all other mortgages were canceled according to law; but the defendants have since asserted a subsequent mortgage as still subsisting, and have taken the initiatory steps to issue executory process on the same, thus casting a cloud on his title, impaired his credit as owner, and caused him damage.

He prays that they be injoined from suing out any writ of seizure and sale on their said pretended mortgage, and seizing his plantation, and also from asserting any right upon the same resulting from their said act of mortgage, and that they be condemned to pay damages.

The defendants filed exceptions to the jurisdiction, *lis pendens*, no cause of action, and insufficiency of averments for an injunction, which were overruled below and are not urged before us.

The answer sets up the existence and reality of their claims and mortgage, the nullity of the sale and adjudication to plaintiff, because by express stipulation in their act of mortgage, which they designate as a *concordat* between their debtors and all the creditors including the first mortgagee, the said plantation could not be sold for cash, as was done, but should have been sold on a credit of one, two and three years, and the further averment that the adjudication to plaintiff was made by deception, and for a trifling amount compared with the real value, and what the plaintiff had offered a short time before; and the defendants pray that the injunction be dissolved with damages, the adjudication to plaintiff be annulled, and their mortgage be recognized and enforced upon the said plantation. They also asked that the first mortgageor and the common debtors be made parties to this suit. The first mortgageor excepted to being made a party to this litigation, and the exception being overruled, she filed an answer. There was a judgment perpetuating the injunction, declaring the rights of the subsequent mortgagees, are transferred by the sale to the proceeds and are no longer subsisting mortgages, from which the defendants appealed.

From the view we have taken of the case, and the questions presented by the principal parties, it is unnecessary to pass on the exceptions filed by the first mortgage creditor, under whose mortgage the sale to plaintiff was made.

The decision of the controversy depends on the interpretation of a clause of the *concordat* invoked by the defendants, as fixing the terms upon which the mortgaged property was to be sold—they contending that this stipulation applied to the first mortgage, while the plaintiff and Mrs. Crozat, the first mortgagee, contend that it applies only to the *concordat*, and that Mrs. Crozat expressly reserved all her mortgage rights, which she could enforce when the condition on which she became a party to the *concordat*, should fail or be violated.

The Villerés had two mortgage creditors, Mrs. Crozat and the succession of Olivier, whose claims bore eight per cent. interest, and several ordinary or chirographic creditors, the consolidated association and others. The above motgage creditors will be designated as first, and the others as third mortgage creditors. Being unable to pay their debts, the Villerés entered into a *concordat* belore Ducatel, notary, with all their creditors, by which they were to pay the first mortgagees only five per cent. interest annually, and the ordinary debts without interest in seven annual installments, for which they executed their notes, and a third mortgage on their plantation to secure the payment thereof. The mortgage claims of Mrs. Crozat and the succession of Olivier were to remain the same without reduction of the principal during the seven years upon the payment of the five per cent. annually. In case of nonpayment of even one of the notes thus furnished (to these third mortgagees), their creditors could seize the property thereby mortgaged and sell it for the whole of their claims, on a credit of one, two and three years, with eight per cent. interest from the day of sale, in notes secured by mortgage on the property sold, and divided into coupons among said creditors.

The five per cent interest was paid for several years, but on subsequent failure of such payment, Mrs. Crozat caused her mortgage, executed before Boudousquié, notary, to be foreclosed, and the plaintiff became the purchaser at a little over two-thirds of the appraised value of the property

The clause of the *concordat* which has given rise to the dispute is as follows:

"The said Mr. Pierre Maspero, administrator of the succession of Mr. Cesaire Olivier, and the said Mrs. Widow Manuel Crozat do hereby declare, that in order to facilitate the said Messrs. Villeré and the said Mrs. Bodin in discharging themselves of their indebtedness to their creditors, they consent and acquiesce with all that is hereinbefore written, and to receive nothing during the said seven years, in deduction of the sums in principal due by mortgage to the succession of the said Cesaire Olivier, deceased, and to her, the said Mrs. Widow M. Crozat, but under the express condition that an annual interest of five per cent. upon said sums shall be paid to them, and that nothing in the present act shall be so construed as to prejudice in any manner their rights, privileges, mortgages, and actions resulting from the above described mortgage acts before Adolphe Boudousquié, which acts shall remain in full force and effect, without any derogation or innovation by virtue of these presents, except what has been hereinbefore stipulated in relation to the delays granted, and to the mode of sale in case of seizure, they reserving to themselves, in case of seizure and sale

before the expiration of the said seven years, the right of availing themselves of their rank of first mortgage creditors, to the extent of the sum of twelve thousand five hundred and ninety-seven dollars and welve cents for the succession of Mr. Cesaire Olivier, and of six thousand dollars for Mrs. Widow Manuel Crozat."

The question is, did this bind Mrs. Crozat, in case of foreclosing her mortgage, to cause the property to be sold on a credit of one, two and three years? We think not; for the reason that her mortgage was not novated and her note was not identified with the *concordat*, and she could not proceed under it to enforce her mortgage rights. Her purpose, in becoming a party to the *concordat*, was simply to give the Villerés an opportunity to pay their debts, by suspending the enforcement of her mortgage for a given time, provided the interest on her claim was punctually paid. The failure to pay this interest, which was made the express condition of her agreement to the delay, would release her from the obligation of the said contract, and restore her to her full rights under her own act of mortgage.

The exceptions made and on which the defendants rely, refers to the only modification of her mortgage rights caused or affected by the said act, to wit, the granting of the delay and the mode of sale provided for by the act. In no other respect was her mortgage to be affected, and this depended on the condition she imposed, to wit, the payment of the interest. The delay was given during which the chirographic creditors alone were to be paid the principal of their claims, and the mode of sale fixed was for their benefit, and to be resorted to by them alone, in case any one of their notes should not be paid. It was only their notes that were identified with the said act, the payment of which alone could be enforced under the said act, and a sale made under it (the said act) was to be made on the credit specified; and the first mortgage creditors would, at such sale, "have the right of availing themselves of their rank," that is, have the right to assert their rank of first mortgage creditors, and require the payment of their claims in full. But if they should have the occasion so to do, and determine to enforce their own mortgages, they could do so only upon and by virtue of the act, which created their mortgage, and without any regard to the stipulations of the *concordat*, as there was no necessary connection between the different acts of mortgage in favor of the two different classes of creditors. It might well have happened, in the course of events, that the debtors would have paid the five per cent. interest on the prior or first mortgages, and failed to pay the last mortgage creditors. Under the *concordat*, so long as this five per cent. interest was paid, the prior or first mortgage creditors had no right to sue or foreclose their mortgage. But if any one of the last mortgage creditors

was not paid, he could proceed to sell, under the *concordat*, although the interest might be paid to the others; and in such contingency, the act (*concordat*) provided for the delay and terms on which the sale should be made under it, and the manner in which the prior mortgage rights would be preserved. This construction gives a reasonable interpretation and effect to every clause and portion of the act. As the sale did not take place under this last mortgage, the stipulations in it as to delays and terms of sale had no application to the case.

Mrs. Crozat did not expressly consent, in the *concordat*, to enforce her first mortgage under the stipulations of that act, and it is not to be presumed that she gave up more of her rights than were clearly and distinctly waived or relinquished. This act is to be construed liberally in her favor, as no one is easily presumed to give.

When the purpose and object of the *concordat* are considered, and all its stipulations, reservations and exceptions construed together, it is obvious, in our opinion, that Mrs. Crozat intended to be bound by any of its provisions, only on condition that the stipulated interest should be regularly paid, and that failing, she had the right to seize and sell as she did.

There is no evidence of deception or ill practices in the appraisement and sale of the property, and having been sold for two-thirds of the appraisement, we see no legal grounds for disturbing the adjudication; and the sale having been legally made, and the price being absorbed by the first and second mortgages, that in favor of the third mortgagees was properly canceled.

Judgment affirmed.

MORGAN, J., *dissenting.* The prayer of the petition in this case is that an injunction may issue prohibiting and restraining the defendants, and each of them, their and each of their agents and attorneys from procuring or suing out any writ of seizure and sale, or other writ or order of seizure based on the mortgage which is recited in the petition, and from seizing thereunder the plantation which the plaintiff claims to own; and that they be injoined from asserting that they have any lien or mortgage on said property resulting from the act of mortgage aforesaid.

I do not think that a judge should have issued an injunction upon such a prayer. I understand that the courts of the State are open to all litigants who desire to assert their rights, and I do not understand, nor have I been informed, that there is any law in Louisiana which prevents a lawyer from bringing a suit for the protection of his clients' interests. Here the door of justice is absolutely closed against the defendants, and their counsel's lips are sealed.

I think it would have been time enough for the plaintiff to have defended himself when he was attacked. As well might a tenant be allowed to injoin his landlord from collecting his rent, or the debtor of a promissory note injoin his creditor from suing him, or a furnisher of supplies which went to make a crop, from seizing the crop in order to secure his privilege.

Having issued the order, however, I think the judge should have maintained that portion of the exception filed by defendants, which specifically declared that the averments of the petition did not justify the issuing of the injunction which had been obtained, which exception I do not think was ever abandoned.

Coming to the merits, I think the case is equally clear for the defendants, in this, at least, that the injunction should have been dissolved. The Villerés (those I mean who are interested in this suit) had several creditors. They were divided into creditors with mortgage, of first and second rank, and chirographic creditors, and the mortgage creditors were also chirographic creditors. To pay their debts, which amounted to over $64,000, they owned two adjoining plantations. Their creditors, desiring to secure themselves, and to give to their debtors an opportunity of acquitting themselves of their indebtedness, went before a notary public, on the fourteenth of December 1867, and accepted the proposition which had been made to them, viz: that a delay of seven years be granted them, from the twelfth January 1867, in which they were to pay their debts, but without interest, in instalments of one-seventh yearly, for which they were to give, and did give, their notes, secured by mortgage on their plantations. It was, however, expressly stipulated that the mortgage claims of Mrs. Manuel Crozat, and the succession of Mrs. Cesaire Olivier, amounting together to $18,597 12, which were already secured by mortgage on the aforesaid plantations, should remain the same, without annual reduction of the capital, but should bear interest at the rate of five per cent. per annum, payable annually, during the term of seven years. It was further agreed that in case of nonpayment of even one of the notes thus furnished by the Villerés, their creditors were to have the right to sue for the reimbursement of the whole of their claims, and cause the property mortgaged to be sold in the manner following, to wit: one-fourth cash, and the balance at one, two and three years credit, with interest at the rate of eight per cent. per annum from the day of sale until final payment, in notes secured by mortgage on the property so sold, and divided into coupons, in order to facilitate the settlement with each of said creditors. And Pierre Maspero, representing the succession of Mr. Cesaire Olivier, and Mrs. Manuel Crozat specially declared that, in order to facilitate

the Villerés and Mrs. Bodin in discharging their indebtedness to their creditors, they consented and acquiesced in what had been done, and agreed to receive nothing during the seven years therein stipulated, in deduction of the principal due to them, under the express condition, however, that an annual interest of five per cent. upon the amount due them should be paid, and that nothing in the act should be so construed as to prejudice in any manner their rights, privileges, mortgages and actions resulting from the mortgage acts passed before Boudousquié, under which their rights as creditors were determined, which acts were to remain in full force and effect, without any derogation or innovation, except what had "been hereinbefore stipulated in relation to the delays granted, and to the mode of sale in case of seizure,' they reserving to themselves, in case of seizure and sale before the expiration of the said seven years, the right of availing themselves of their rank of first mortgage creditors." Now it seems to me that the intent of this act, and the language in which the intention is expressed is not susceptible of two interpretations. In case their interest was not paid they might proceed under their rank of first mortgage creditors, but the sale was to take place under the delays granted, which were one, two and three years credit.

Now, this agreement between the parties, was a contract, binding equally upon all who had signed it, and was the law between them. Notwithstanding which Mrs. Crozat, on the twentieth December 1869, without having previously endeavored to have the contract annulled, and without notice to any of her co-creditors, applied for and obtained an order of seizure and sale against the property, the terms being cash. At the sale Fleitas became the purchaser. To these proceedings the defendant was not a party. In the answer filed, after the exception was overruled, it is averred that the illegal and improper practices by which the sale was made were well known to the plaintiff, and were a fraud upon defendant's rights, and a violation of their common act, all of which it is alleged was known to Fleitas.

Now, it is established that Mr. Fleitas knew of the act by which the creditors of the Villerés had agreed to the terms upon which their property should be sold in case they did not comply with their engagements. He consulted counsel upon the subject who only advised him that he could purchase with safety after having received the assurances of the counsel, who represented the subsequent mortgage creditors, that they would consent to the sale being made for cash.

That the entirely irreproachable counsel representing these creditors believed he was acting in behalf of the true interest of all parties concerned, and that he believed he was authorized to give the assurances he did, I do not for a moment question. But whether he was

so authorized is another matter, and I think, from the record that he was mistaken. Under all the circumstances of the case it seems to me clear that the injunction should have been dissolved, and the defendants left free to pursue their rights in such form as the law authorizes. I therefore dissent from the opinion of the majority.